# PEOPLE v. KNIGHT.

## Crim. No. 42; December 31, 1895.

### 43 Pac. 6.

**Rape—Testimony by Physician.—**On a Prosecution for rape, a physician who testified for the prosecution that penetration would produce the condition of the parts discovered by his examination could be cross-examined as to whether all such conditions could not have been caused by other things, though he had stated that a certain instrument would cause certain of the conditions.

**Rape—Cross-examination of Prosecutrix.—**Where, on a prosecution for rape, prosecutrix testified that she was seven years of age when she came to the state, and that at the time of trial she was ten years of age, and on cross-examination stated that she did not know when she came to the state, she could be asked by defendant what she gave as her age to her school teacher after coming to the state.

**Rape—Cross-examination of Prosecutrix.—**Where, on a prosecution for rape of one who lived with defendant and his wife, prosecutrix testified that the reason she did not complain until several days after the offense was committed was because defendant had made her afraid of him by throwing things at her and scolding her, questions put to her by defendant to determine when this treatment commenced should have been allowed. In such case she could be cross-examined as to whether defendant ever said anything to her about having intercourse with her.

**Rape—Cross-examination of Prosecutrix. —**In such a case, prosecutrix having testified that the wife went out and left her alone in the house with defendant, and that she was afraid of him, she could be asked on cross-examination why she did not go out with the wife.

**Rape—Cross-examination of 'Prosecutrix.—**On a trial for rape, under an indictment alleging several acts of intercourse with one who lived with defendant and his wife, after prosecutrix testified that she was compelled by threats of the wife to tell her of the offenses, and that the wife suspected it from finding her trembling, she could be cross-examined as to whether the wife saw her trembling after the first offense or after the last, or how many times she saw her thus.

**Rape—Evidence.—On a Trial for Rape of One Who Lived** with defendant and his wife, where a physician, who examined prosecutrix twelve days after the offense, testified that the hymen was entirely absorbed, and that, from indications, it might have disappeared long before, and prosecutrix testified that her only excuse for not

making immediate complaint was her fear of defendant, prosecutrix could be cross-examined as to whether any person had intercourse with her before defendant, especially where defendant claimed that the charge was concocted by his wife.[1]

**Rape—Evidence of Concocted Charge.**—Where, on a prosecution for rape, defendant claims that the charge was concocted by his wife, it is error to exclude circumstantial evidence to support that claim.

**Rape—Outcry.**—On a Prosecution for Rape of a ten year old child, an instruction asked by defendant on the question whether the child made any outcry at the time of the commission of the crime is properly refused.

APPEAL from Superior Court, Kern County; A. R. Conklin, Judge.

Jesus Knight was convicted of rape, and from the judgment and an order denying him a new trial he appeals. Reversed.

E. Rousseau and E. J. Emmons for appellant; W. F. Fitzgerald, attorney general, for the people.

HAYNES, C.—Appellant was convicted of the crime of rape and sentenced to imprisonment at Folsom for the term of nineteen years; and he now appeals from said judgment, and from an order denying his motion for a new trial. The offense is charged to have been committed upon Felis Aldama, a girl of ten years of age, the granddaughter of appellant's wife. Appellant complains of numerous rulings of the court below upon questions of evidence, and of alleged errors in instructions given and refused, and also specifies as a ground of reversal that the evidence was not sufficient to justify the verdict.

Drs. Rogers and Taggart made a physical examination of the prosecuting witness some time after the last alleged outrage, but how long after is uncertain. The examination was made on September 7, 1894. Trinidad Grijalba, the officer who arrested defendant, and who appears to have made the complaint, first heard of it, as he "guesses," on September 2d, but how long before that date the last of the four alleged acts of intercourse occurred is not precisely fixed. The girl

---

[1] Cited with approval in Baden v. State, 57 Tex. Cr. 295, 122 S. W. 556, which was a similar case.

testified upon the trial that she told her grandmother "about a week after the last time," but how long a time elapsed after she told her grandmother before it was communicated to Grijalba nowhere appears. Assuming that it was communicated to Grijalba at once, at least twelve days elapsed after the last of the four occurrences before the examination was made by the physicians. The physicians testified to certain conditions of the parts as they found them at the time of the examination, and both concluded that the producing cause must have occurred some time before the examination, but how long they could not tell. Dr. Rogers was asked by the district attorney whether penetration by a man would cause such bruises and inflammation as he found, and he answered, "Yes; on a child of that age." He was afterward cross-examined by counsel for defendant, and that was followed by a redirect examination by the district attorney. Counsel for defendant, upon recross-examination, asked the following question: "All of the spots, and the disappearance of the hymen, and all the irritation you saw there, could have been made by various other things, could it not?" This question was objected to as being incompetent, irrelevant, and immaterial, and not proper cross-examination. The Court: "I think that question has been answered once. Let the objection be sustained. Gentlemen, you cannot cross-fire on a witness this way." It is true, some questions had been put to the witness partly covering the points of the above interrogatory. One went only to the red spots testified to by the doctor, and another to the use of a particular instrument —the finger; and, as to the latter, the doctor replied that it would not cause the injuries. The question here, however, covered all the injuries and appearances, and embraced every instrument or means of producing the injuries, aside from that which the prosecution sought to prove by the witness had caused it. The objection to the question should have been overruled.

Felis Aldama, the prosecuting witness, testified that she was born in Lower California, where her parents still reside; that she was seven years old when she left there; that since she came to this state she had lived part of the time with an aunt, and the remainder of the time with her grandmother; and that she was ten years old. None of these facts, except her age, and that she lived with her grandmother, were brought

out on the examination in chief, which was exceedingly brief, and which gave no hint of the time when the occurrences to which she testified took place—not even the year in which they occurred. Under these circumstances, counsel for the defendant asked when she first came to Sumner, but she was unable to tell. She was then asked as to whether she went to school, and to whom she went, and, having named a teacher, was asked the following question: "What age did you give her as your age when you went to school—when she took your age down?" An objection to this question was improperly sustained by the court.

The witness gave as a reason for not telling her grandmother what had occurred that she was afraid; that she was afraid of him before these occurrences; that "he was always scaring me and my grandma, and making us afraid"; "he was always scolding us and throwing things at us." She was then asked, "When did he first commence throwing things at you?" and to this question an objection was sustained. Several other questions, of a similar character, put for the purpose of ascertaining when the defendant's bad treatment commenced, were also excluded. "Q. Did he ever talk to you about having anything to do with you?" An objection to this question was also sustained. Again, the witness testified that her grandmother went out, and left her in the house with the defendant, and that she was afraid to stay with him, and was then asked, "Why did not you go out with your grandmother?" An objection to this question, and to others of similar import, were also sustained. She further testified, upon cross-examination, that she told nobody but her grandmother. "Q. Did she say anything to you that made you tell it? A. Yes, sir. Q. What did she say? A. She told me she mistrusted something, and why didn't I tell her, and she wanted me to tell her. Q. Did she threaten you? A. Yes, sir. Q. Did she take out a knife, and threaten to kill you with it? A. Yes, sir. Q. What did you do that made her think there was something wrong? A. Because she found me trembling in the kitchen. Q. Did she see you trembling that way after the first time?" To this question it was objected that it was incompetent, irrelevant and immaterial, and calls for a conclusion. The Court: "It calls for a fact, but, whether the fact has any bearing on the case or not, let the objection be sustained. We must get through with

this case sometime." Objections were also sustained to each of the following questions: "Did she ask you whether or not there was anything the matter with you after the first time? Did she discover there was anything the matter with you until after the fourth time? How many times did she say she found you trembling?" We think all these questions were proper, and that the rulings of the court were erroneous, and unreasonably restricted the cross-examination of the witness. An objection was also sustained to the following question to this witness upon cross-examination, "Had anybody else done so before?" It is true that, if the defendant had committed the act charged, the fact that someone else had done so before would be wholly immaterial. But Dr. Rogers had testified to certain conditions of her person, and, among other things, he was asked the following question: "In regard to no appearance of the hymen, would that indicate recent rupture, or a long time before? A. It was entirely absorbed, and that might have disappeared before. The indications are that it would have disappeared before. The margins of the rupture had entirely disappeared." So far as can be determined from the testimony of the girl, the alleged acts of intercourse with the defendant followed each other with intervals of only a few days; and, if viewed solely in the light of the evidence of the doctor, it is by no means clear that the question was either immaterial or irrelevant. Besides, she testified that she did not tell her grandmother because of her fear of the defendant; and if, in reply to the question, she had admitted that the defendant was not the first person who had intercourse with her, and she had not disclosed the fact, it would go far toward discrediting her statement of the reason for not informing her grandmother of defendant's conduct. Or if, on the other hand, she had disclosed such prior assault by another, and if the claim of defendant's counsel that this prosecution was incited by the grandmother of the child without cause, the condition of the child as found by the doctor, though produced by another, could readily be used to fasten the crime upon the defendant. In view of these facts which may have existed, and not because the prior crime of another absolved the defendant, if he were in fact guilty, the objection should have been overruled.

In regard to defendant's effort to introduce evidence that the charge against him was concocted by his wife, the grand-

mother of the child, the court and counsel seem to have misunderstood each other from the beginning to the end. Under some of the propositions of counsel, the evidence should have been admitted, and, under some of the statements of the court, it might have been admitted. The colloquy is too long to be stated here, but one or two paragraphs may be stated: At folio 142 counsel said: "We want to prove that the grandmother has concocted the story, and has trained this child to swear to it. We don't suppose we can prove all those things, but, from what we think we can prove, we want the jury to infer the rest." We suppose that counsel meant that he could prove certain circumstances, from which the main fact must or might be inferred. In other words, he confessed his inability to prove by direct evidence the ultimate fact, but that he expected to be able to prove it by circumstantial evidence. The fact itself being material and relevant, any evidence, whether direct or circumstantial, tending to prove the ultimate fact, was competent. In one of the statements of the court, reference was made to the question of a conspiracy between the grandmother and the child, but a subsequent statement shows that the court did not use the word "conspiracy" in the sense that the child aided in concocting the story. The court said: "If you state to the court that your intention is to connect this child with it, either as an active participant, or an instrument in the hands of the grandmother, I will permit that question. Mr. Rousseau: I will make this statement about it, that we cannot prove the actual training, but we can prove it from the circumstances only. The Court: Do you propose to show to this jury that the grandmother has educated the child up to this story? Mr. Rousseau: Yes; I cannot show the actual training. The Court: Then it is an inference you want the jury to draw? Mr. Rousseau: Yes; it is an inference. The Court: Let the objection be sustained." Other parts of the colloquy, which covers several pages of the transcript, show that, when counsel said he could not show the "actual training," he meant that he did not have direct or primary evidence of the fact. One step in the proposed evidence was the alleged jealousy of the grandmother, the wife of the defendant. What other facts counsel expected to show, tending to sustain the alleged training of the child, does not appear. His offer, however, embraced in his statements above quoted was proper, and he should have been allowed to intro-

duce any competent evidence, whether direct or circumstantial, which tended to prove the ultimate facts stated.

In relation to the instruction requested by defendant touching the point whether the girl made any outcry, it need only be said that, being under the legal age of consent, her consent to the act could not change its character. If it were shown that she did cry out, it would, of course, tend to corroborate her story, while the failure to do so would not necessarily show that the defendant was not guilty, since her silence would, in the absence of other circumstances, only tend to show her consent. It may be said, however, that her condition, as testified to by the physicians, would render it highly improbable that these acts could have been perpetrated without producing such pain as to cause her to cry out, unless prevented by threats or other means; and, while such circumstances would furnish proper grounds for an argument to the jury, it is not perceived that any proposition of law is involved, making an instruction directly upon the point necessary, while all that could be properly said was covered by the more general instructions given.

Questions touching the affidavits presented in support of the motion for new trial need not be noticed, in view of the conclusion we have reached. The judgment and order appealed from should be reversed and a new trial granted.

We concur: Vanclief, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.