[Crim. No. 817.   Second Appellate District, Division Two.—November  22, 1921.]

## THE PEOPLE, Respondent, v. CLARENCE CALDWELL, Appellant.

[1] CRIMINAL LAW—ARREST OF JUDGMENT—DENIAL OF MOTION—ORDER NOT APPEALABLE.—An order denying a motion for an arrest of judgment is not appealable.

[2] ID. — RAPE — MISCONDUCT OF COURT — COMMENT ON DEFENDANT'S EVIDENCE.—In a prosecution for rape, remarks of the trial judge, while a witness for the defense was on the stand, that counsel for the defendant were "not establishing a thing," that they were "not asking a material question," that all they were doing was "to corroborate what was said by the plaintiff's witnesses," and that if they had any witnesses who knew anything to call them, was reversible error where such evidence contradicted that of the prosecution in several material respects and especially concerning the condition of the prosecuting witness shortly after the commission of the alleged offense.

[3] ID.—APPEAL—REVIEW OF MISCONDUCT—ABSENCE OF TIMELY OBJECTION.—Where, in a prosecution for rape, the trial judge in commenting on defendant's evidence added one harmful remark to another until the total was enough to do substantial injury, the right to have such misconduct reviewed on appeal is not foreclosed for failure to take timely exception to such remarks, since admonition to the jury under such circumstances would have availed nothing.

[4] ID.—RAPE—EVIDENCE—TESTIMONY OF PROSECUTRIX—INFLUENCE OF FEAR.—In a prosecution for rape, the exclusion of evidence tending to show that the prosecutrix was testifying against the defendant through fear of her adoptive parents was error.

[5] ID.—INFORMATION—PROSECUTRIX UNDER AGE—FORCE AND VIOLENCE—JOINDER IN ONE COUNT.—An information charging the crime of rape in one count containing the two allegations that the prosecutrix was of the age of less than eighteen years and that the crime was committed by force and violence, is not subject to demurrer on the ground of improper joinder.

[6] ID.—APPEAL—AGE OF PROSECUTRIX—ATTEMPTED IMPEACHMENT—PRESUMPTION FROM RECORD.—On an appeal from a judgment of conviction for the crime of rape, it must be assumed that the rulings in sustaining objections to attempts to impeach the testimony of the prosecuting witness as to her age by asking her whether she made statements on the same subject as a witness at the preliminary examination of the defendant, even if erroneous,

were harmless, in the absence of a showing of such statements in the record on appeal.

[7] ID.—TESTIMONY OF ADOPTIVE PARENTS—DOCUMENT SHOWING AGE—EFFECT OF INTRODUCTION BY DEFENDANT.—On such an appeal, the appellant cannot contend that error was committed in receiving the testimony of the adoptive parents of the prosecuting witness as to her age, where he himself introduced in evidence an application of the prosecutrix for admission to a child's home showing her to be under the age of consent.

[8] ID.—OPINION OF ADOPTIVE PARENTS AS TO AGE.—In such a prosecution, the opinion of the adoptive parents of the prosecuting witness as to her age is admissible where they adopted her nine years before the commission of the alleged offense.

[9] ID.—DURESS IN GIVING TESTIMONY—EVIDENCE.—Evidence that the adoptive mother of the prosecuting witness caused her to be put in the juvenile hall after the preliminary hearing was inadmissible to prove that the prosecuting witness was under duress in giving her testimony.

[10] ID. — TESTIMONY OF PROSECUTRIX — CAUTIONARY INSTRUCTION — WHEN IMPROPER.—In a prosecution for rape, a cautionary instruction concerning the testimony of the prosecutrix is uncalled for where she is not a child of tender years or when her testimony is corroborated.

[11] ID.—NATURE OF CHARGE—INSTRUCTION.—An instruction in such a prosecution that the jury should not permit their minds to be prejudiced against the defendant merely on account of the nature of the crime or because he was charged therewith is proper, but the refusal to give it is not error.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. Z. B. West, Judge. Reversed.

The facts are stated in the opinion of the court.

O. V. Willson and E. R. Utley for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

WORKS, J.—This is an appeal from a judgment of conviction of rape, from an order denying appellant's motion for a new trial, and from an order denying his

8. Competency of witness to testify to age of another person, notes, Ann. Cas. 1918A, 262; 111 Am. St. Rep. 584.

motion for an arrest of judgment. **[1]** The latter order is not appealable.

The information charged that the rape was committed with force and violence and also that the prosecutrix was under the age of eighteen years, that being the age of consent to sexual intercourse. Appellant was of the age of twenty years. The facts show that a party of six, including the prosecutrix, the appellant, two other boys, and two other girls, drove in an automobile to a park in the country in the latter part of the afternoon. The prosecutrix and appellant separated themselves from the other four. As evening approached, the four, desiring to return home, made search for the missing couple, but did not find them and finally started home without them. They went to the home of Mr. and Mrs. Smith, father and mother of one of the two girls, where they told the girl's parents that they had been unable to find appellant and the prosecutrix and had left them in the park. Smith then asked the two boys to accompany him on a search for the missing pair, and they did so, going in the car in which the young people had just returned, one of the boys driving it. The car, at some distance short of the park, met appellant and the prosecutrix walking beside each other along the road. They were taken into the vehicle and the entire party returned to the Smith home. Mrs. Smith questioned the prosecutrix soon afterward and elicited from her a statement that appellant had violated her while they were in the park. The prosecutrix is an adopted child, and her adoptive father was called to take her to the family home, some blocks away. Appellant was put under arrest for the alleged crime that evening.

Appellant contends for a reversal of the judgment on the ground of the conduct of the trial judge in making the following statement while a witness for the defense, one of the boys who drove back to the park with the other boy and with Mr. Smith, was on the stand: "Well, I do not usually desire to interpose the court's own objection, but you are not establishing a thing, you are not asking a material question and all you are doing with these three last witnesses is to corroborate what was said by the plaintiff's witnesses. Now, you must have some purpose in that, because you certainly know you are not getting

anywhere with your evidence, if you have got any witnesses that know anything that will contradict any witness brought or anyone that knows anything material, call the witness.'' These remarks met with no protest from appellant's counsel, but the district attorney at once attracted additional attention to the attitude of the court by saying, ''I don't know whether the court thinks that the prosecuting office is negligent, but I can't object when it is favorable to the prosecution, for that reason I did not object.''

Notwithstanding the failure of appellant to take exception to the judge's statement, by that means giving him the opportunity to withdraw it and to admonish the jury to disregard it, we feel called upon to consider minutely the point presented. In doing so it will be necessary to take a view of portions of the evidence. If such a view shall disclose that counsel for appellant were ''not establishing a thing,'' that they were ''not asking a material question,'' that all they were doing with their ''three last witnesses'' was to ''corroborate what was said by the plaintiff's witnesses,'' that they must have had ''some purpose in that because'' they certainly knew they were not ''getting anywhere'' with their evidence, and that the judge was justified in saying, ''If you have got any witnesses that know anything that will contradict any witness brought or any one that knows anything material, call the witness'': if, we say, these things shall appear, then appellant's contention is at an end, except for some considerations which we shall mention below, for the language employed by the court will have been shown to be harmless upon that score. On the other hand, if the things mentioned, or some of them, shall not appear from a review of the evidence, then we can discern a great injury resulting to the defense and therefore to the rights of appellant.

There were but five witnesses for the defense, called in the following order: A physician, who testified as an expert; the prosecutrix; the two boys who were of the party which went to the park and who returned there with Smith on the search for the missing pair; and the defendant himself. The three witnesses referred to in the statement of the judge to which exception is taken were the prosecutrix and the two boys, and his remarks were made toward the close of the direct examination of the boy who

testified last of the two. It is to be noted, therefore, as a preliminary to the examination of the testimony of the three, that if their statements contained anything that was worthy the attention of the jury, the remarks of the judge were such as completely to nullify the effect of those statements and to leave appellant's defense on the facts to rest upon his own unsupported testimony, for we have already observed that the sole remaining witness testified as an expert.

Not much is to be said concerning the testimony of the prosecutrix when on the stand for appellant. Her examination was very brief. In fact, objection was made and sustained to the principal questions addressed to her and she was at once called from the stand. We must say, however, that there is nothing in the record to indicate that she was not called in good faith, and the questions put to her were consistent with the general line of defense adopted by appellant. They were objectionable only because they had been addressed to her before, on her cross-examination while on the stand as a witness for the people.

Upon the score of the materiality of the testimony of the two boys and the extent to which it contradicted the evidence brought forth by the prosecution, we are first pointed to the testimony of Smith. Speaking concerning the trip to the park in search of the prosecutrix and appellant, and testifying for the prosecution, that witness said, "when we met the two coming in the machine Lillian [the prosecutrix] jumped in the machine and threw her arms around my neck and just simply collapsed." A little later the witness said, "I held Lillian all the way into Santa Ana." Smith's testimony, and that of others, shows that on the ride to the park he and Cecil Park, one of the boys, occupied the rear seat, and Dewey Callahan, the other boy, sat in the front seat alone and drove the car. When appellant and the prosecutrix were taken up the latter got into the rear seat between Smith and Parks and appellant sat in front with Callahan. With this observation we turn to a part of the cross-examination of Smith: "Q. Now, what do you call 'collapse'? A. Well, she was in a nervous condition and she wasn't able hardly to walk, she was just simply prostrated. . . . Q. And as soon as she got in the car she did what? A. She fell into my

arms. . . . Q. Inside of the car? A. Yes. . . . Q. Did you have your arms out? A. Yes. Q. Ready for her to fall into your arms? A. I did. Q. And she didn't sit down in the seat, did she? A. Yes. Q. After falling into your arms or before? A. Both. . . . Q. What did you say to her there? A. 'Lillian' was about the only thing I said. Q. You kept saying 'Lillian,' is that it. A. Yes. . . . Q. And all you said was 'Lillian' all the way in? A. Yes, sir. . . . Q. What was the first thing said by either you or the defendant or [the prosecutrix] when you met them . . . ? A. 'Lillian.' Q. You said 'Lillian'? A. Yes. Q. And what did she say? A. 'Mr. Smith.' . . . Q. What else was said? A. That was all then said. Q. Park say anything to either of them in your presence then . . . ? A. Not that I remember. Q. Didn't you hear Park say at that time, ask [the prosecutrix] and the defendant if they were lost? A. I don't remember. Q. You didn't? A. No, sir. Q. So there was nothing said from that time you met them at the park gate by any of you until you got home except 'Lillian' and 'Mr. Smith,' is that right? A. I wouldn't swear nothing was said, I couldn't say that; I was looking at Lillian, the main thing I thought of. Q. You weren't thinking of anything except of Lillian's welfare, you can't remember a thing said except 'Lillian' and 'Mr. Smith,' and you addressed her as 'Lillian' and she you as 'Mr. Smith'? A. Yes. Q. Nothing else said? A. Nothing that I recall. . . . Q. When was the next you saw the defendant? A. Well, it was a few minutes after we got home; I don't know how many minutes. I took the girl in the house and she was in such a condition when we went in I took care of her first. Q. Did you carry her in your arms? A. No, sir; I very nearly carried her in; she walked, however. Q. . . . and she never even laid down when she got in the house? A. She set down very forcibly. . . . Q. And she got up and talked with her young friends in your house? A. No, sir. Q. She didn't talk to you at all, while in the house before her stepfather came for her? A. She talked but she didn't get up to talk. Q. They were all sitting down when they were talking? A. Yes. . . . Q. What did you say to her? A. That I don't remember; it was only as a father would do to a daughter, just quietly,

her nerves were in such a condition. Q. What did you do to quiet her? A. Stroked her head and talked to her."

We now take up the testimony of the two boys in order to determine the extent to which Smith was contradicted by them. Dewey Callahan, having the prosecutrix in mind, testified in part as follows: "Q. Did you see that girl at the house before her father came for her. . . . ? A. I did. Q. Was she sitting down all the time or not? A. She wasn't. Q. What was she doing in the house? A. Walking about the rooms. Q. Was she talking with anybody? A. No. Q. Was she weeping copiously, weeping? A. Just walking around the room, with her head down. Q. And Smith was there, was he? A. He was." Cecil Park, speaking first of the occurrences at the time when he, Smith, and Callahan met the prosecutrix and appellant coming from the park, testified in part thus: "Q. Do you remember what the first thing said was when you met them there? A. The first thing said, Mr. Smith holloed 'Lillian.' Q. What was the next thing said? A. Well, I asked the defendant and the girl both if they had been lost. Q. What did they say, if anything? A. The defendant said, 'yes' and the girl said something. Q. Did you see the girl walking along the road that night? A. I didn't see them until we got to them. Q. Did she need any assistance to get into the car? A. She got in by herself. Q. Did she collapse after she got in the car? A. Well, I don't know what a collapse is, she sat down in the machine and Mr. Smith put his arm around her. Q. She sat down in the machine and Mr. Smith put his arm around her? A. After she sat down in the machine Mr. Smith put his arm around her."

These extracts from the evidence show plainly that Callahan and Park contradicted Smith in several respects, the contradictions, taken together, tending in a considerable degree to impeach his story in two of its particulars: First, that the prosecutrix collapsed when she and appellant were met outside the park; second, that at Smith's home she was so nearly prostrated that she was unable to be on her feet and needed the attentions by means of which he says he ministered unto her. In addition to these contradictions of Smith, Callahan, and Park testified at some length upon the general occurrences in which they figured, having to

do with the case. More specifically, they both testified that the prosecutrix sat on appellant's lap during the ride of the three couples to the park and that shortly after they arrived at their destination, the prosecutrix and appellant separated themselves from the other four, who remained in company. One of the boys testified that the prosecutrix did not cry on the return trip to the Smith home.

As is usual in such cases the events surrounding the actual commission of the alleged offense are to be gathered only from the testimony of the prosecutrix and of appellant. The girl's recital was to the effect that appellant and she had sexual intercourse in the park as a result of physical force employed by him upon her. Appellant testified that he resorted to no force in accomplishing what was done by the two; that there was no resistance upon the girl's part; that, in truth, she was in full accord with him in what was done; that, with that accord on her part, they indulged in a certain course of conduct toward each other which did not include penetration and that he never did penetrate her person; that the reason there was no penetration was because the girl said she was not well and therefore would not permit him to indulge in sexual intercourse with her. It will thus be seen that there were two issues arising from the testimony of these two witnesses: First, was the crime of rape consummated upon the prosecutrix by the performance of the final act without which the crime cannot be committed, that is, a penetration of the person of the woman? Second, if the crime was committed, did it result from the employment of force, or is appellant guilty solely because the prosecutrix was under the age of consent? Upon one of these questions the jury found with the prosecutrix, upon the other they declined to believe her testimony and found with appellant. They adjudged him guilty as charged, but found that the crime was committed "without force and violence" and recommended him to the leniency of the court. Their verdict, then, shows that a decided doubt was present in their minds on the score of the credence to be given respectively to the testimony of the two. If the conduct of the trial and the shaping of the evidence had been modified in but a slight degree in favor of appellant, the jury might have found against the testimony of the prosecutrix upon

the issue as to which, the record being as it is, they found with her. Granting the presence of but a slight added circumstance favorable to appellant they might well have utterly disbelieved the prosecutrix, they might well have given credence to the entire story of appellant. Is it not plain that the trial could have resulted so if the judge had not taken, and expressed, his determined attitude against all of appellant's evidence on the facts except the testimony of appellant himself? The jury, assuredly, after the judge made his statement, must have laid the entire testimony of Callahan and Park out of consideration except as favorable to the prosecution. They were not told merely that the answers of the two boys amounted to nothing by way of defense, but the judge said directly and positively that those answers strengthened the case made by the prosecution. As we have already observed, the attitude of the judge put the appellant in such a position that his story must have stood alone before the jury. But for his own word, he faced the jury undefended by any evidence on the facts. All corroboration of his testimony was swept away at a blow. Perhaps it may be well to state, at the risk of repetition, the extent to which appellant was corroborated by Callahan and Park. Smith's testimony tended to prove that when the prosecutrix came from the park, while she was on the way to his home, and after she had arrived there, she was in a condition which might naturally have followed upon a forceful violation of her person. This testimony was disputed by the two boys. In addition, appellant's statement that the prosecutrix was a willing participant in their conduct in the park is somewhat borne out by the testimony of the two boys that she sat on appellant's lap on the way to the park and that, soon after the party reached its destination, prosecutrix and appellant separated themselves from the other four, who remained together. Nor does it matter that the corroboration of appellant's story in these respects related to the issue upon which the jury found with his story as against that of the prosecutrix. The heartier the corroboration of that branch of his testimony, the more inclined, naturally, would the jury have been to disbelieve what the prosecutrix said upon the other issue between them, that

is, upon the question as to whether her person was penetrated.

There is another feature of the case in which Callahan's and Park's contradiction of Smith was most material. It is contended by appellant, inasmuch as the prosecutrix made no complaint concerning his conduct except in response to questions, that she testified falsely through fear of Smith and her adoptive father and mother, that, in effect, she testified under their coercion. Many questions were put by counsel in support of this theory at the trial on cross-examination of witnesses for the prosecution and it was shown that the next morning after the alleged commission of appellant's offense, the adoptive mother shook the prosecutrix in an endeavor to make her talk concerning the events of the evening before. We have already observed that the statements out of which the prosecution grew were made by the prosecutrix in response to questions put to her by Mrs. Smith. Under this state of the record and under the contention of appellant concerning it, he was entitled to the benefit of the testimony which contradicted Smith, for, if he could have convinced the jury that Smith testified falsely concerning the girl's condition after she came from the park, that circumstance might have aided the jury in some degree, though perhaps slight, to a conclusion favorable to his contention that the entire case, including the incriminating testimony of the prosecutrix, was inspired not only by Smith, but by the others whom appellant endeavored to hold responsible for a coercion of the prosecutrix. The remarks of the trial court effectually swept this right away.

[2] Laying aside these questions, all arising from the nature of the subject matter of the testimony of the two boys, other considerations lead us to the conclusion that the statement of the judge did irreparable damage to appellant's defense. Whatever the nature of the examination of the two witnesses, whether counsel were "getting anywhere" with it or not, we cannot avoid the conclusion that the judge's remarks showed a decided hostility toward appellant and toward his defense. In this connection we must mention a circumstance to which we have not yet adverted. We have observed that the statement of the judge occurred toward the close of the testimony of Park. A

55 Cal. App.—19

few pages further along in the record and at the end of the
testimony of that witness the reporter's transcript shows
the following, the italics being ours: ''The Court: Now,
gentlemen, the noon hour has arrived and we will take an
adjournment, if you have another witness that you can call
or want to call, call him. Mr. Utley [of counsel for de-
fendant] : We have no other. Mr. Willson [also for defend-
ant] : Excepting the defendant, that will take some time.
The Court: Then you have no other witnesses *of this kind?*
Mr. Willson: You mean— The Court: *I mean to establish
all the facts testified to by the plaintiff.* Mr. Willson: We
do not, your honor, of course, we respect the court, but
we do not so consider.'' This return of the trial judge to
the attack, after what he had said a few pages back in
the record, will serve to accentuate all that we have said
above upon the point presented as to his conduct. We
mention the occurrence in this place particularly, however,
for the reason that, but for the announcement of a noon
recess of an hour and a quarter which immediately followed
it, the quoted colloquy was the last event of the trial pre-
ceding the appellant's being sworn in his own behalf, for
he took the stand, the last witness in the case, upon the
reconvening of court after the recess. In such a position
was his defense left when he alone and unsupported was to
face the jury in testimony upon the serious charge pend-
ing against him. The jury could not have heard the judge
say, as he had said but a short time previously, that ap-
pellant's counsel were ''not establishing a thing,'' that all
they were doing by all their witnesses on the facts was ''to
corroborate what was said by the plaintiff's witnesses,''
that they ''must have some purpose'' in their 'course' be-
cause they certainly knew they were not getting anywhere
with their evidence, that if they had any witnesses that
knew anything ''that will contradict any witness brought
or anyone that knows anything material,'' they should ''call
the witness''; they could not have heard the district at-
torney say, under the inspiration of the judge's statement,
that he did not object because appellant's evidence was
''favorable to the prosecution''; they could not have heard
the judge say, finally, that appellant's witnesses were of
a kind ''to establish all the facts testified to by the plain-
tiff''; the jury could not have heard all these things with-

out feeling that all the evidence offered to them up to the moment that appellant took the stand in his own behalf tended to prove his guilt. Undoubtedly he opened his testimony with the jury feeling as they had felt at the close of the case for the prosecution; nay, he was in even a worse position, for the jury had heard the judge say that the testimony of his witnesses had corroborated the testimony of the prosecution, which was to say, in effect, that when he took the stand he had a stronger case to meet by his testimony than if he had foregone the aid of other witnesses and had himself testified immediately after the people had rested. We cannot feel that, so handicapped, appellant had the fair trial to which he was entitled under the law.

[3] The attorney-general insists that appellant's contention can avail him nothing for the reason that no exception was taken to the statement of the judge at the time it was made. It is the general rule, of course, that misconduct of a district attorney or of a trial judge must be called to the attention of the court by a defendant whose rights are prejudiced by it, upon the theory that through timely objection or exception the court is given the opportunity duly to admonish the jury to disregard the fault, thus making harmless a course of conduct which but for the admonition would be harmful. It is not always true, however, that admonition will eradicate the evil done by an improper statement made by district attorney or judge. When it will not the necessity for objection to the misconduct vanishes and in such a case the error is not cured even if the court, in the absence of objection, hastens in an attempt to correct the impression improperly conveyed to the jury (*People* v. *Derwae,* 155 Cal. 592 [102 Pac. 266]; *People* v. *McDonald,* 167 Cal. 545 [140 Pac. 256]). It is impossible for us to imagine what the judge could have said by way of admonition or instruction, of sufficient potency to remove from the minds of the jury the effect of his statements made in their presence in this case. His utterance was not a short, sharp expression, the effect of which might have been removed by a statement that it came forth through inadvertence or undue haste. He spoke at some length and added one harmful remark to another, until the total was enough to do substantial and lasting injury to the defense. Moreover,

he evidently spoke with deliberation, for his remarks were prefaced by a statement that he disliked interposing the court's own objection; and, when he had concluded, he had impressed the jury with the idea that he spoke after due reflection, for his condemnation of the evidence of the defense reached back through the testimony of three witnesses; and not content with what he then said, he took up the same theme a short time later, as we have already shown, thus settling his views firmly in the minds of the jury. Disregarding the rule that the jury are the sole judges of the facts, he placed before them what amounted to an expression of a deliberately formed opinion on his part, as appellant was about to take the stand as the last witness in his behalf, that the case of the prosecution was stronger than when the prosecution rested. Considering the nature of the evidence the people had offered, the jury could not well have escaped the conviction that the judge believed appellant guilty as charged. No admonition could have purged their minds of that conviction.

The attorney-general takes the ground that the judge did admonish the jury to disregard his statements. After what we have said in the paragraph immediately preceding this, it is not worth while to spend any great time upon a consideration of this claim. Therefore we shall notice it but briefly. At the conclusion of the colloquy between court and counsel which we have last quoted above, and immediately following the statement of Mr. Willson that "we respect the court, but we do not so consider," the judge said: "Ladies and gentlemen of the jury, the remarks of the court are not for your consideration, it is only addressed to counsel; disregard it." This is the "admonition" upon which the attorney-general makes his point. The judge's statement was ineffective for two reasons: First, it necessarily impressed the jury as referring only to the remark made just preceding the retort of Mr. Willson and as not at all touching the longer statement of the judge made some time before; second, it was totally inadequate to the occasion, forgetting for the moment what we have said in the last preceding paragraph. The judge did not say that he had no right to speak as he had spoken, that all questions of fact were within the peculiar province of the jury, or that his opinions were incorrectly formed. On

the contrary he left with the jury the impression that he had the right so to disburden himself, albeit by way of remark to counsel, the duty of the jury being not to leave their ears unstopped when he found it necessary thus to speak. Such an "admonition" could have borne no fruit whatever.

[4] Appellant's counsel, in an endeavor to substantiate their claim that the prosecutrix testified under the coercion of her adoptive father and mother and Mr. Smith and that certain physical disabilities under which the prosecutrix claimed she labored were due to her fear of them, especially of her adoptive father and mother, asked her several questions on cross-examination. These were objected to on the ground that they were incompetent, irrelevant, and immaterial and in each instance the objection was sustained. The various rulings are assigned as error. One of these questions was, "You were afraid of your father when he came there to that Smith house that night, were you not?" Another was, "Now, what did your father say to you when you saw him at the Smith house?" Yet another, "You would never have said a word to anybody about this affair, had it not been for your fear of your father and mother; isn't that true?" And still another, "Your mother abused you when you arrived home?" In order that their purpose in asking these questions might be clearly before the court, counsel made the following statement after the objection to the second question had been sustained: "We offer to prove that this girl is testifying under the influence of her father and mother and has all the way through the proceedings, that she is under the duress of her adopted father and mother, and we make the offer to prove it by cross-examination as well as other witnesses." To this offer the court responded, after an objection by the district attorney: "The court ruled on the objection that it was immaterial; now the counsel offers to prove by this witness certain things which would run counter to the ruling of the court, therefore the offer to prove by this witness is disallowed." The attorney-general contends that none of these questions was proper cross-examination, but that position is not tenable, even if it be admitted that, strictly speaking, the questions were not legitimate cross-examination. None of the objections made by the

district attorney included that ground. Moreover, the court, in his remarks in response to the offer of proof, distinctly stated that he considered the evidence as immaterial and he specifically rejected the offer on that ground. Counsel were justified in taking the statement as final. They doubtless did so and they doubtless refrained from calling witnesses by whom to prove the offered matter on that account. It would have been a futility for them to call witnesses for the purpose of making the proof, merely to have objection made to the testimony and to have it sustained on the ground that the evidence was immaterial. After all that had transpired they were amply justified in assuming finally that any evidence offered by them on the subject would meet that fate. We are convinced that the evidence proffered both by the questions and the offer of proof was not immaterial (*People* v. *Knight,* 5 Cal. Unrep. 231 [43 Pac. 6]). It is certainly most important in a rape case that proof be made, if such be the fact, that the prosecutrix is influenced by her fear of others to testify against the defendant. The credibility of a witness in any judicial proceeding will be affected by the fact that the witness gives testimony through the coercion or duress of others; and it is a most important function of the law of evidence to ascertain the credibility of witnesses. We are satisfied that the court erred in sustaining objection to the questions we have set out above.

A reversal of the case must follow from the commission of the errors we have noted and we are therefore called upon to consider such other points discussed in the briefs as may arise upon a retrial.

[5] The information under which appellant was tried consisted of but one count, containing the two allegations that the prosecutrix was of the age of less than eighteen years and that the crime with which appellant was charged was committed by force and violence. The pleading was demurred to on the ground of an improper joinder in the respect mentioned and the demurrer was overruled. It is contended that the ruling was error. The point is not well taken, as there was no improper joinder (*People* v. *Jailles,* 146 Cal. 301 [79 Pac. 965]; *People* v. *Maruyama,* 19 Cal. App. 290 [125 Pac. 924]).

[6]  Counsel for appellant made several attempts at the trial to impeach testimony of the prosecutrix as to her age by asking her whether she had made statements on the same subject as a witness at the preliminary examination of appellant.  In each instance they were halted by the court's sustaining an objection on the ground that no proper foundation for the inquiry had been laid.  There is nothing in the record to show what the statements of the witness at the preliminary examination were.  We are therefore unable to say that they were different from her statements made at the trial.  Under such circumstances we are bound to assume that the rulings of the court in sustaining the objections, even if erroneous, which we do not decide, were harmless.  An appellant must always make an affirmative showing that errors of the trial court have resulted prejudicially to him.

[7]  Appellant contends that the trial court erred in receiving, over his objection, testimony of the adoptive father and mother of the prosecutrix as to her age.  Their testimony on the subject was based upon their recollection of the appearance of the girl as indicating her age at the time of her adoption by them, the answers evidently having been given through a process of adding the number of elapsed years after the adoption to the number representing the age the girl appeared to have attained when the adoption occurred.  Whatever intrinsic merit this question possesses is robbed of interest on the present appeal because of the fact that appellant himself introduced evidence showing prosecutrix to have been less than eighteen years of age at the time of the commission of the alleged offense.  This evidence is in documentary form and is entitled "Application for Admission of a Child to the Michigan Children's Home Society."  The child mentioned in the application was the prosecutrix, and, among various items of statistical matter concerning her set forth in the paper, the date of her birth is stated.  Under well-established rules of evidence appellant is bound on this appeal by the showing made by this document, introduced by himself.  Nor does it matter that the paper was not a public record and that it might have been excluded upon objection by the district attorney, as "inadmissible evidence, if admitted without objection, is sufficient proof of the fact to which it relates" (*Prentice*

v. *Miller,* 82 Cal. 570 [23 Pac. 189]). It becomes necessary, however, to consider the point made by appellant, as it may arise on the retrial of the cause, when appellant may not see fit again to offer the application.

[8] It appears to be settled by an overwhelming weight of authority that a· witness may give his opinion as to the age of one whose age is the subject of judicial inquiry. Where the point presented is merely as to whether the individual in question has passed from minority to majority, some cases are to the effect that the opinion of any witness who has seen him may be taken. Where the ascertainment of exact age is necessary a sterner test is generally applied. In such a case the witness must have had an intimacy, or at least an acquaintance of some duration, with the person whose age is under inquiry before the opinion may be received. In both kinds of cases, however, that is, in those in which the question is merely as to the passage from minority to majority, as well as in those in which age is to be ascertained, many of the authorities decide that the opinion cannot be given until after the witness has described the individual who is the subject of the inquiry. A copious list of cases in support of all these rules may be found in a note to *State* v. *Pruett,* L. R. A. 1918A, 662, 685. In a number of decisions it has been held that opinion evidence as to age, generally, may be received only when the subject of the inquiry is not in attendance in court or is deceased (*State* v. *Robinson,* 32 Or. 43 [48 Pac. 357]), and the cases deciding that a description of the subject must accompany the opinion would seem to be based upon the same theory, for if he were present in court no description would be necessary. The reason for this rule is that if age is to be determined from appearance and the subject is in court the jury may themselves resolve the question without the aid of opinion evidence. It has been determined in this state that the age at a particular time of one who was deceased at the date of the inquiry was provable by the opinion of one who had known him for twenty-five years (*People* v. *Bond,* 13 Cal. App. 175 [109 Pac. 150]).

We state these various rules of law in but a general way for the reason that it appears to us to be unnecessary to review or to distinguish separately the cases which announce them. No case like the one now before us has come to our

attention, and any of the rules which are above stated and which would appear at first glance to operate against the reception of the opinions of the adoptive parents as to the age of the prosecutrix may be shown not to apply here. They testified at a time when she had been under their especial care and observation as a dependent member of their household, as their child, although by adoption, for a period of nine years. She had come to them as a little girl and they had observed, practically as minutely and narrowly as would natural parents, her transition from childhood to budding womanhood. It is next to impossible that they did not know her actual age at the time of the adoption, although the knowledge might be hearsay when tested by the rules of evidence. It is next to impossible, granting for the moment that her age at the period of the adoption was unknown to them, that they did not know her approximate age at the time they testified. They fixed her age as more than two years under eighteen and, reasoning from the standpoint that only an approximation was possible as coming from them, it is impossible that under all the circumstances of their intimate association with her they could have been two years from the truth in stating the approximation. They need not have described her, for she was present in court. On the other hand, her presence in court did not render their opinions inadmissible under a rule we have stated above, for it would be futile to assert that the jury could judge her age from seeing her a few hours as well as could they after having, during nine years, reared her to young womanhood. If it be said that the testimony of the adoptive parents might in some sense be designated as secondary to books of public record which might disclose the date of the birth of the prosecutrix, although the assertion would not apply in the case of natural parents, it may be retorted that the record before us discloses that she was born outside of the state. Therefore, evidence secondary to the public records of the date of birth would be admissible. On the whole, to conclude, we are convinced that the opinions of the adoptive parents were properly received.

[9] Appellant contends that the trial court erred in sustaining an objection to the question, which referred to the prosecutrix and which was addressed to her adoptive mother

on cross-examination, ''You have even caused her to be put in the Juvenile Hall after the preliminary hearing?'' This question was asked in support of the defense that the prosecutrix was under duress in giving her testimony in the cause. It appears to us, however, that it did not tend to prove that defense and that the objection that it was incompetent, irrelevant, and immaterial was for that reason good.

[10] It is insisted that the court erred in refusing an instruction to the effect that the testimony of the prosecutrix ''ought to be viewed with great care and caution by you and you must weigh the evidence in this case with utmost care, without bias or prejudice.'' Cautionary instructions of this character are proper in rape cases, under many decisions, either when the prosecutrix is a child of tender years or when her testimony is uncorroborated. Neither of these conditions was present in this case. Therefore the instruction was uncalled. for (*People* v. *Rangod*, 112 Cal. 669 [44 Pac. 1071]; *People* v. *Corey*, 8 Cal. App. 720 [97 Pac. 907]). Nor do we mean to determine whether the refusal to give such an instruction, in a case where it were *proper* to give it, would amount to reversible error.

[11] Appellant requested the trial court to instruct the jury as follows: ''You are instructed that you shall not allow your minds to be prejudiced against this defendant merely because he has been charged here with this crime, nor on account of the nature of the crime here charged, but you are to consider just as fairly and without prejudice the evidence in this case, both for the prosecution and the defendant, as you would if the crime charged were of another nature.'' Perhaps it would not have been improper for the court to have given this instruction; but, on the other hand, it was not error to refuse to give it (*People* v. *Barney*, 114 Cal. 554 [47 Pac. 41]).

The judgment and the order denying the motion for a new trial are reversed and the cause remanded for a new trial. The appeal from the order denying the motion in arrest of judgment is dismissed.

Finlayson, P. J., and Craig, J., concurred.