Filed 2/5/15  Rogers v. CoolSystems CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DREW ROGERS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COOLSYSTEMS, INC.,<br><br>Defendant and Respondent. | B252607<br><br>(Los Angeles County<br>Super. Ct. No. BC489622) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth A. White, Judge.  Affirmed.

Law Offices of Victor L. George, Victor L. George and Wayne C. Smith, for Plaintiff and Appellant.

Jackson Lewis, Thomas M. Marchlewski, Sherry L. Swieca, and Caroline B. Wolf, for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff Drew Rogers (plaintiff) sued his former employer, defendant CoolSystems, Inc. (CoolSystems), for age discrimination. The trial court granted summary judgment for CoolSystems after determining that plaintiff had not raised a triable issue to support a reasonable inference that CoolSystems's proffered reasons for laying him off were a pretext for discrimination. We reject plaintiff's challenges to this ruling, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff served as CoolSystems's vice president of sales from January 2011 until he was laid off in June 2012. He was 57 years old when he started working, and 58 when let go. CoolSystems makes cold compresses, and sells them to athletes, orthopedic doctors, and veterinarians. Plaintiff oversaw the domestic sales force, and made $220,000 per year plus commissions. During his tenure, sales increased 12 to 14 percent each year, and plaintiff received a positive performance review in March 2012 from the CEO who originally hired him.

In 2012, CoolSystems had a cash flow problem. CoolSystems first recognized the problem in January 2012, and predicted a cash shortage during the upcoming summer. CoolSystems's CEO retired in March 2012, and was replaced by Craig Grabell (Grabell). Grabell urged CoolSystems's sales force to increase sales in late April 2012, citing the looming cash flow shortage. On June 8, 2012, Grabell emailed CoolSystems's executive team, entreating them to "watch cash very carefully" and warning that he "may be forced to make other head count cuts" (that is, to make further layoffs).

Approximately two weeks later, on June 18, 2012, CoolSystems's human resources (HR) director called plaintiff and told him he was laid off. When plaintiff asked why, she said it was because of his performance; when pressed, she said it was part of a reduction in force. Plaintiff was one of 16 employees laid off between April and November 2012; others voluntarily left the company and were not replaced. Plaintiff was selected for layoff by 59-year-old Grabell, in consultation with the HR director, because Grabell was unhappy with the domestic sales levels, and because Grabell felt he could manage the domestic sales force himself and save CoolSystems the cost of plaintiff's

2

salary.  After plaintiff was terminated, Grabell managed the domestic sales force for at least eight months.  At that point, in March 2013, one of the salespeople plaintiff had hired—then 45-year-old Phillipe Ballaire (Ballaire)—was promoted to vice president of sales.

Plaintiff sued CoolSystems for age discrimination, in violation of (1) the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940)[1]; and (2) public policy.  He sought compensatory and punitive damages.  CoolSystems moved for summary judgment.  The trial court granted CoolSystems's motion and entered judgment for CoolSystems.

Plaintiff timely appeals.

## DISCUSSION

### I.    General legal principles

When an employee is fired or otherwise subjected to an adverse employment action because of race, gender, being age 40 or older, or any other protected characteristic (that is, when the employee is subjected to "disparate treatment"), the employee can prove this violation of FEHA in one of two ways.  (§§ 12940, subd. (a), 12926, sub. (b) [age 40 or older is a protected class]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*) [referring to "disparate treatment"].)  The employee can point to statements by decision makers or others reflecting animus against the employee's protected group or suggesting that the employee was the target of discrimination.  But where, as here, there is no such "smoking gun" evidence, the employee's proof of discriminatory motive will instead turn on circumstantial evidence such as the inferences that can reasonably be drawn from the employer's conduct.  (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529 (*McGrory*); *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 283 (*Nazir*).)

As a way to "'progressively . . . sharpen[] the inquiry into the elusive factual question of intentional discrimination'" (*St. Mary's Honor Ctr.v. Hicks* (1993) 509 U.S.

---

[1]    All further references are to the Government Code unless otherwise indicated.

3

502, 506 (*Hicks*), quoting *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 255 fn. 8), the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*), developed a three-step burden-shifting mechanism. Under this mechanism, the employee has the initial burden of producing evidence establishing a prima facie case of discrimination. (*Guz*, *supra*, 24 Cal.4th at p. 355.) To make this showing, the employee must generally adduce evidence that (1) he or she belongs to a protected class, (2) he or she was qualified for, or competent at, the job, (3) he or she suffered an "adverse employment action," and (4) "some other circumstance suggests discriminatory motive." (*Ibid.*) If this showing is made, the employer has the burden of producing evidence indicating it had a legitimate, nondiscriminatory reason for its treatment of the employee. (*Id.* at p. 356.) If it does, the employee then bears the burden of proving that the employer's proffered reasons are a smokescreen or pretext for its true, discriminatory purpose. (*Ibid.*)

The *McDonnell Douglas* burden-shifting mechanism works differently when evaluating a summary judgment motion. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*); cf. *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309 (*Sandell*) [mechanism originally designed for use at trial].) Summary judgment functions to separate the cases worth "'the time and cost of factfinding by trial [citation]'" from those that are not. (*Serri*, at p. 859.) A case warrants trial (and the denial of summary judgment) only when it presents a "genuine" or "triable" issue of fact—that is, when "'the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary judgment] motion'" (rather than be subject to resolution by the court as a matter of law). (*Id.* at p. 860, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; see also *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 365 (*Davis*); *Sandell*, at p. 319.)

Consistent with the screening function of summary judgment, it is the employer—as the party seeking to avoid trial—who bears the burden of disproving an element of the employee's prima facie case or adducing evidence to support a legitimate, non-discriminatory reason for its adverse employment action. (*Serri*, *supra*, 226 Cal.App.4th

4

at p. 861; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 741 (*Cheal*).) Then and only then does the burden shift to the employee to "'produc[e] substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination . . .'" (*Serri*, at p. 861, quoting *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038; see also *Guz*, *supra*, 24 Cal.4th at p. 357.) The employee's proffered evidence must "'permit a rational inference that the employer's actual motive was discriminatory.'" (*Serri*, at pp. 861-862, quoting *Guz*, at p. 361.) That evidence must be "'specific' and 'substantial'" (*Batarse v. Service Employees' Internat.Union* (2012) 209 Cal.App.4th 820, 834), and sufficiently robust to sustain a reasoned inference in the employee's favor based on more than mere speculation, conjecture, or fantasy (*Cheal*, at p. 755; *McGrory*, *supra*, 212 Cal.App.4th at p. 1537).

We review a summary judgment ruling independently, without regard to the trial court's conclusions or its reasoning. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455.) We may not weigh conflicting evidence or assess the credibility of witnesses (*Sandell*, *supra*, 188 Cal.App.4th at p. 319), and must resolve any doubts against summary judgment and in favor of trial (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415).

## II. Application of principles

Plaintiff's case is based on circumstantial evidence. No one at CoolSystems—including Grabell—ever mentioned or even hinted that age was a factor in laying off plaintiff. Plaintiff points to evidence of a comment made by Ballaire to one of his fellow sales people that the timing of his promotion "ha[d] to do with" plaintiff's termination, but this comment has no connection to plaintiff's age. CoolSystems has proffered two legitimate, nondiscriminatory reasons for laying off plaintiff: (1) its cash flow problem; and (2) plaintiff's performance. Under the modified *McDonnell Douglas* test discussed above, summary judgment in this case accordingly turns on whether plaintiff has adduced

5

substantial, specific evidence that raises a rational inference of pretext that is sufficient to enable a reasonable trier of fact to rule in his favor.

Plaintiff makes two species of arguments. As a legal matter, he contends that summary judgment is inappropriate on issues of pretext, citing *Nazir*, *supra*, 178 Cal.App.4th at pages 285-286. However, *Nazir* does not stand for such a broad proposition and would be inconsistent with the weight of authority cited above if it did. As a factual matter, plaintiff offers five arguments as to why he has met his burden. We consider each, individually and collectively.

### A. Replacement by Ballaire

Plaintiff argues that Coolsystems's decision to name 45-year-old Ballaire as vice president of sales eight months after plaintiff was let go is sufficient evidence of pretext to preclude summary judgment and entitle him to a trial. Plaintiff cites *Sandell*, *supra*, 188 Cal.App.4th 297. To be sure, *Sandell* held that an employer's act of replacing the older plaintiff with a younger employee—even if delayed—can raise an inference of unlawful discrimination sufficient to establish the employee's prima facie case. (*Id.* at pp. 321-324.) But *Sandell* did not reach the question before us now—namely, whether delayed replacement can overcome an employer's evidence of its nondiscriminatory motive. *Sandell* did not get that far because the employer in that case also made several age-disparaging comments. (*Id.* at pp. 325-326.) Although evidence supporting a plaintiff's prima face case can be enough, "[i]n an appropriate case" and in conjunction with other evidence, to "permit a finding of prohibited bias" sufficient to rebut evidence of legitimate, nondiscriminatory reasons (*Guz*, *supra*, 24 Cal.4th at p. 356; *Hicks*, *supra*, 509 U.S. at pp. 510-511 [same]; accord, *Reeves v. Sanderson Plumbing Prods.* (2000) 530 U.S. 133, 147), it is not enough *by itself* to rebut those reasons; if it were, the last two steps of the modified *McDonnell-Douglas* test would become irrelevant. The law requires something more. As we discuss below, that "something extra" is missing here.

6

### B. Falsity of CoolSystems's proffered reasons

Plaintiff argues that the two reasons CoolSystems gave him for his layoff—its cash flow problem and his performance—are factually false and thus give rise to an inference that CoolSystems is lying to hide its true, discriminatory motive.

Plaintiff's evidence that CoolSystems's reasons are false is weak. He attacks the cash flow shortage as untrue because, in his view, its duration and details were not "clear and reasonably specific." But plaintiff has offered no evidence to contradict the existence of the cash flow problem. He also does not explain why the lack of information about its anticipated end date or the absence of other, unspecified details calls into question the authenticity of the problem. Plaintiff next points to evidence that four other CoolSystems employees received raises totaling $80,000 during the same general time frame he was laid off. However, it is also undisputed that these employees were "grossly" underpaid, that they were essential to CoolSystems's operation, and that the raises were necessary to retain them. Plaintiff lastly assails CoolSystems's criticisms of his performance because his March 2012 performance review by the prior CEO was positive and because he increased sales during his tenure. CoolSystems did not dispute these facts; rather, the new CEO Grabell laid plaintiff off because his performance was not good enough, during the cash flow crunch, to warrant his salary outlay when Grabell could (and did) do the job himself.

Even if we accept that plaintiff has established a triable issue as to the falsity of CoolSystems's proffered reasons, he has not raised a triable issue as to whether that falsity creates a reasonable inference of *pretext.* "[A]n inference of intentional discrimination cannot be drawn solely from evidence . . . that the [employer] lied about its reasons." (*Guz, supra,* 24 Cal.4th at p. 360.) That is because "[t]he pertinent statutes do not prohibit lying, they prohibit discrimination." (*Id.* at p. 361.)

### C. Inconsistency of CoolSystems's proffered reasons

Plaintiff next argues that CoolSystems offered inconsistent reasons for his layoff because the HR director first said he was laid off for performance issues and then cited the cash flow shortage.

An employer's inconsistent reasons for an adverse employment action can create a triable issue as to pretext where the "'"weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action [are such] that a reasonable factfinder *could* rationally find them 'unworthy of credence,'"'" and thus pretextual. (*Serri*, *supra*, 226 Cal.App.4th at p. 863, quoting *Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1005; see also *Guz*, *supra*, 24 Cal.4th at p. 363.)

This is not a case where the employer gave one reason for laying off an employee, and later came back with a different one. Instead, both the HR director and Grabell have consistently cited both reasons for plaintiff's layoff; indeed, the HR director cited both in the same conversation with plaintiff. Nor are these reasons inherently or otherwise contradictory.

On these facts, no reasonable factfinder could reasonably infer that CoolSystems's reliance on these two reasons raises an inference of discriminatory motive.

### D. *Part of larger plan to de-age CoolSystems's work force*

Plaintiff argues that his layoff and eventual replacement by Ballaire eight months later is part of a larger effort to reduce the age of CoolSystems's workforce.

He points to three categories of evidence. He first cites the CoolSystems's other layoffs in 2012, noting that some of the employees were age 40 or older and that other employees left voluntarily. He next notes that CoolSystems's management team has gotten younger. He lastly cites the fact that at least one of the four people who received a raise during the cash flow shortage was under age 40.

This evidence is insufficient to raise a reasonable inference of pretext for two reasons. First, it is based on statistical samples that are too small to be meaningful. (*Guz*, *supra*, 24 Cal.4th at p. 367 ["courts have rejected any consequential inference of intentional bias on grounds . . . that the sample was too miniscule to demonstrate a statistically reliable discriminatory pattern"; sample sizes of 17, 28 and 51 too small].)

Second, and more to the point, the undisputed evidence negates the significance of the statistics plaintiff cites. The layoffs show too weak a pattern of ageism: It is

8

undisputed that seven of the 16 employees who were laid off between April and November 2012 were under age 40, and that more than half of CoolSystems's current employees (40 out of 77) are age 40 or older. The voluntary departure of employees only weakens the inference that CoolSytems was reshaping its workforce in a discriminatory fashion.

There is also no evidence of age reduction in CoolSystems's management team. Plaintiff notes that Grabell was eight years younger than the CEO he replaced, but the prior CEO left voluntarily and Grabell was not responsible for hiring himself. Plaintiff argues that the 58-year-old CFO was replaced by a 53-year-old and that the mid-50's vice president of engineering and marketing was replaced by a person in her mid-30's, but it is undisputed that the replacement employees did not have the same jobs as their predecessors. Plaintiff also argues that two other executives were replaced by others five to ten years their junior, but plaintiff offered nothing but his own "estimate" of the former executives' ages based solely on the fact that he overlapped with them at CoolSystems. The trial court did not abuse its discretion in excluding plaintiff's lay opinion as lacking a proper foundation. (*People v. Caldwell* (1921) 55 Cal.App. 280, 296 [requiring "an intimacy, or at least an acquaintance of some duration" before a lay opinion regarding a person's "exact age" is admissible]; cf. *United States v. Yazzie* (9th Cir. 1992) 976 F.2d 1252, 1256 [allowing lay opinion as to how old an alleged statutory rape victim *looked* when her *apparent* age was relevant].)

The raises also do not create any inference of discrimination. Only one of the employees who received a raise was under age 40; another was in her 40's; and the ages of the other two are not in the record.

### E.    Lack of adherence to procedures for implementing a reduction in force

Plaintiff contends that the procedures CoolSystems followed in laying him off create a reasonable inference of pretext. He cites three procedural deficiencies: (1) CoolSystems's employee handbook states that "[t]he company will attempt to provide advance notice, if possible" of a decision to lay off an employee as part of a reduction in force, and plaintiff received no advance warning; (2) Grabell did not contemporaneously

9

document his thought processes regarding which positions were to be cut, which means his later explanations were ad hoc; and (3) Grabell and the HR director gave inconsistent accounts of how great a decisionmaking role the HR director played in selecting employees for layoff.

As an initial matter, adherence to procedures is illuminating where the employer ignores whatever procedures it has promised to follow prior to termination (such as termination only for "good cause"). (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224 [relying upon *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, a case dealing with "good cause" termination]; *Nazir*, *supra*, 178 Cal.App.4th at 279-283 [same].) Where, as here, the employee is employed at will, the employer's failure to adhere to specific procedures is of lesser moment. (See *McGrory*, *supra*, 212 Cal.App.4th at p. 1514 [noting that at-will employees can be terminated for any or no reasons as long as the reason is not discriminatory].)

In any event, plaintiff's alleged procedural deficiencies do not create any reasonable inference of discriminatory motive. CoolSystems did not violate its employees manual because the manual does not *guarantee* advance notice. Grabell's failure to create contemporaneous notes of his internal thought process also creates no inference that he acted for discriminatory reasons because his stated reasons have been nondiscriminatory and consistent over time. Grabell and the HR director's accounts of how they decided who would be laid off are not inconsistent. Both indicated that the HR director participated in the decision, but that Grabell was the driving force and key decision maker.

Viewing plaintiff's five arguments collectively leads to the same result: Beyond his prima facie case, he has not adduced substantial evidence to create a reasonable inference that CoolSystems's proffered, nondiscriminatory reasons are a pretext. (*Serri*, *supra*, 226 Cal.App.4th at pp. 861-862.) Summary judgment was consequently appropriate on the FEHA claim as well as the public policy claim that hinges on a FEHA violation. (See *Mendoza v. Wester Medical Center Santa Ana* (2014) 222 Cal.App.4th

10

1334, 1338.)  In light of our conclusion, we have no need to address whether there is a triable issue as to a prima facie case of discrimination or as to punitive damages.

## DISPOSITION

The judgment is affirmed.  CoolSystems is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST